UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

MARK JAMES SAVOY                                    CIVIL ACTION NO. 08-CV-232

VERSUS                                              JUDGE MELANÇON

ST. LANDRY PARISH
COUNCIL, ET AL.                                     MAGISTRATE JUDGE METHVIN

**MEMORANDUM RULING**

Before the Court are the City of Eunice (hereinafter the "City") and Chief James Gary Fontenot, individually and in his official capacity as Chief of Police of the City of Eunice ("Chief Fontenot") (collectively, "defendants") and their Motion for Summary Judgment and Motion for Attorney's Fees [Rec. Doc. 128], plaintiff Mark J. Savoy's Memorandum in Opposition thereto [Rec. Doc. 131 ], and defendants' Reply [Rec. Doc. 139]. For the reasons that follow, defendants' Motion [Rec. Doc. 128] will be GRANTED on the merits and DENIED as to the imposition of attorney's fees.

**I. BACKGROUND**[1]

This action arises out of a series of events beginning on or about December 28, 2006, at which time Savoy was involved in a police chase beginning in the City of Eunice and

---

[1] It is important to note at the outset that the parties' respective versions of the events surrounding this action are notably different. Defendant contends, and the Court agrees, that the inconsistencies are not material to the resolution of the motion as it is based on the ground that plaintiff's claims are prescribed. What follows is a recitation of the facts from each parties' perspective.

1

eventually resulting in plaintiff allegedly jumping off of the Atchafalaya basin bridge [Rec. Doc. 128-3].  Savoy was sought by law enforcement officials on the basis that he had allegedly kidnaped his wife and her two minor children earlier that day in Eunice, Louisiana [Rec. Doc. 128-3]. Plaintiff remained at large and on the run from police until January 14, 2007, when he was apprehended by a joint task force comprised of various law enforcement entities, including the United States Marshal's Office, the Iberia Parish Sheriff's Department, and officers with the Eunice Police Department [Rec. Doc. 128-3, 2].

Savoy contends that defendants acted unlawfully and unconstitutionally when they apprehended him on January 14, 2007. Specifically, plaintiff claims that he was unlawfully and unconstitutionally arrested, and that excessive force was used against him during his arrest, causing injury to his nose [Rec. Doc.131].  Moreover, Savoy asserts that he was denied medical care for the treatment of his broken nose while housed at the Eunice jail from January 14, 2007 through January 19, 2007. Specifically, Savoy states that he was not brought to an ENT specialist as recommended by the emergency room physician at Iberia Medical Center. The record indicates that Savoy was taken to Iberia Medical Center on January 14, 2007, where he was diagnosed with an acute nasal fracture, facial contusions, and lumbar-cervical strain/sprain; was treated, and subsequently released [Rec. Doc. 128-3, 2].[2]  The release instructions indicate that Savoy was to have a follow-up appointment with

---

[2] Plaintiff points out that medical discharge records specifically instruct that there be further steps taken to address Savoy's injuries. The record shows that additional orders were made by the ER Physician as evidenced in what is titled, "Iberia Medical Center Emergency Department Aftercare Instructions." Therein, under the subheading, "Prescriptions or medical care prescribed for your care," specific instructions were given, namely, that Savoy was medically clear to be released from the ER at that time, but was to follow head injury precautions for

an ENT specialist at a later date [Rec. Doc. 128-3, 2].

Subsequently, that day, Savoy was booked in the Eunice City Jail [Rec. Doc. 128-3, 2]. Savoy contends that after booking, on numerous occasions he requested medical treatment for the injuries to his nose while he was under the custody and control of Chief Fontenot [Rec. Doc. 131].[3] Savoy also alleges that on January 17, 2007, he was assaulted by a fellow inmate, consequently sustaining injury to his lip, which he states required immediate medical attention [Rec. Doc. 131,2].[4] As a result of this alleged assault, Savoy further alleges that his lip became infected, and because he was not given immediate medical attention as requested, he is left with a small scar [Rec. Doc. 131,2].

Savoy was transferred to the St. Landry Parish Jail on January 19, 2007, and was prescribed antibiotics for the lip laceration by the jail physician on recommendation of the jail nurse [Rec. Doc. 128-3 Exhibit B, St. Landry Parish Jail records]. After being transferred, Savoy alleges that on February 18, 2007, approximately five inmates jumped on him and began beating him, resulting in injuries to his ankle, hand, jaw and other parts of his body

---

twenty-four hours, use a nasal spray twice a day as needed, apply medicated ointment to the nose injury daily until healed, as well as directions that plaintiff be given Tylenol or Motrin for pain. Moreover, included were instructions that Savoy be "rechecked by medical personnel at prison with ENT followup" [Rec. Doc. 128-3, 2].

[3] Defendants point out in their Reply Memorandum [Rec. Doc. 139] that plaintiff was only in the custody of these defendants for a period of five days. Dr. Gaffga, plaintiff's own treating ENT, testified that with a fractured nose he would not need to see the patient for upwards of two weeks after the injury to allow swelling to subside. [Rec. Doc. 139, Exhibit D, Deposition of Dr. Gaffga, PP. 14-18, 26-30, and 42-44] Thus, defendants argue that since Savoy was no longer in their custody two weeks after the injury, there was no duty on their part to see that Savoy received followup attention [Rec. Doc. 139].

[4] Savoy alleges that his injury was a result of a "shake down" orchestrated by the Chief and other officers in an attempt to try and make the inmates think that Savoy had caused them to be in trouble [Rec. Doc. 128-3, 3]. Plaintiff further submits that Jodi Andrus, a prison guard, determined after assessing plaintiff's medical condition, that he was "knocked out" but did not require medical attention [Rec. Doc. 131, 1].

[Rec. Doc. 131, 2]. Again, Savoy alleges that despite his request for immediate medical care, the deputies made the decision that Savoy was not in need of medical care, and thus did not provide the care requested [Rec. Doc. 131, 2].[5]

On February 15, 2008 [Rec. Doc. 1], Savoy brought this action under 42 U.S.C.A. §1983 against numerous defendants, including the City of Eunice and Chief James Gary Fontenot, individually and in his official capacity as Chief of Police of the City of Eunice, claiming that his Fourth, Eighth, and Fourteenth Amendment rights were violated.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994) ( en banc ). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving

---

[5] Defendants' argue in their Reply Memorandum that any events that occurred after Savoy was transferred from the custody of the Eunice City Jail and the control of Chief Fontenot, are immaterial to the claims Savoy asserts against these defendants as they have nothing at all to do with the City of Eunice or Chief Fontenot [Rec. Doc. 139].

party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[6] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court

---

[6] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the nonmoving party of these essential elements renders all other facts immaterial. *Id.* at 322.

is required to render the judgment prayed for. Fed.R.Civ.P. 56(c); *Celotex Corp.*, 477 US at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id*.

### III. LAW & ANALYSIS

A.  Defendant's Motion for Summary Judgment

**1. Waiver of the Affirmative Defense of Prescription**

In their Motion for Summary Judgment [Rec. Doc. 128], defendants assert the affirmative defense of prescription in seeking summary judgment. Plaintiff urges the Court to decline to accept defendants' pleading, and argues that as the defense was not raised in defendants' initial or amended answers, plaintiff has been prejudiced by defendants raising it in their motion. Defendants respond, and the Court finds, that defendants did in fact plead the affirmative defense of prescription in each of their four answers by citing La. C.C.P. art. 1005. To the extent it is a distinction with a difference[7], plaintiff had notice and more than an adequate opportunity to address the issue. Accordingly, the Court will consider defendants' argument that plaintiff's claims against these defendants are time-barred.

---

[7] Federal Rule of Civil Procedure 8(c) provides that parties must plead all affirmative defenses, and it is well-established that "[f]ailure to follow this rule generally results in a waiver." Fed. R. Civ. P. 8(c); *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir.1983). The rule, however, is not without exception. Where the defendant raises the defense in a manner that does not result in "unfair surprise" to the plaintiff, the "[t]echnical failure to comply precisely with Rule 8(c) is not fatal." *Bull's Corner Restaurant v. Director, Federal Emergency Management Agency,* 759 F.2d 500, 502 (5th Cir.1985), quoting *Allied,* 695 F.2d at 855*;* see also *Dickinson v. Auto Center Mfg. Co.,* 733 F.2d 1092 (5th Cir.1983). However, "[a] defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Ingraham v. United States,* 808 F.2d 1075, 1079 (5th Cir. 1987).

**2. The Statute of Limitations and *Contra Non Valentum***

Defendants assert that as Savoy's Original Complaint against them was not filed until February 15, 2008, his claims against the defendants are prescribed under Louisiana Civil Code Article 3492.[8] Savoy argues that his claims against defendants are not prescribed, as they fall under the extended two year prescriptive period provided by Louisiana Civil Code Article 3493.10,[9] involving delictual actions addressing damages sustained as a result of a crime of violence. *See* La C.C. art. 3493.10. Savoy contends that all alleged delictual actions against the defendants are crimes of violence, thus subject to the two year prescriptive period, and are not prescribed.[10]

Generally, the party pleading prescription has the burden of proving that a lawsuit has prescribed. *Petry v. Hebert*, 2006-1447 (La.App. 3 Cir. 5/2/07), 957 So.2d 286, 288 (citing *Younger v. Marshall Indus., Inc.*, 618 So.2d 866, 869 (La.1993)). However, if on the face of the petition it appears that prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period. *Id.* In *Wilson v. Garcia*, the United States Supreme Court articulated the guidelines to be used in determining what prescriptive

---

[8] Louisiana Civil Code Article 3492 states, in pertinent part, "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La C.C. art. 3492.

[9] The Court notes that in Plaintiff's Memorandum in Opposition to Defendants' Motion at page four, plaintiff argues that a two year prescriptive period is applicable to his claim against defendants as his damages are the direct result of a crime of violence under La. C.C. art. 3494.10 [Rec. Doc. 131]. The Court must assume that plaintiff relies on La. C.C. art. 3493.10 to make such assertion.

[10] La. C.C. art. 3493.1 states: "Delictual actions which arise due to damages sustained as a result of an act defined as a crime of violence under Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950 are subject to a liberative prescription of two years. This prescription commences to run from the day injury or damage is sustained."

period should apply to Section 1983 claims. 471 U.S. 261 (1985). Therein, the Court determined, "§1983 claims are best characterized as personal injury actions" and the forum state's statute of limitations applicable to such claims should be used. *Id.* at 280. The Fifth Circuit Court of Appeals, in *Gates v. Spinks*, further stated, "The state statute governing the general tort remedy for personal injuries should apply to 1983 actions ..." 771 F.2d 916, 919 (5th Cir.1985). The Louisiana Civil Code provides in La C.C. art. 3492 a general prescriptive statute that governs tort actions. The article subjects delictual actions to a liberative prescription of one year. See La. C.C. art. 3492. The Fifth Circuit qualified this prescriptive period, however, holding that "a section 1983 action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action." *Watts v. Graves*, 720 F.2d 1416, 1417 (5th Cir.1983). Plaintiff has not presented, nor has the Court found, a decision of the Louisiana Supreme Court, the Fifth Circuit, or the United States Supreme Court that would serve as authority for his assertion that his claims against defendants are subject to the two year prescriptive period under Louisiana Civil Code Article 3493.10. Conversely, there is ample authority supporting defendants' argument that even if the alleged conduct could be considered a crime of violence, under *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), Louisiana Civil Code Article 3492 provides the applicable limitations period. In *Owens*, the United States Supreme Court faced the issue of whether to apply the intentional torts approach or the residual personal injury approach in a §1983 action brought by an individual

8

who alleged that state university police had beaten him after arresting him without cause. *Id.* The Supreme Court ruled that district courts are directed to apply the "residual or personal injury statute of limitations." *Id.* Under *Owens*, even if the conduct alleged could be characterized as a crime of violence, Article 3493.1 is inapplicable, and the applicable prescriptive period for plaintiff's alleged claims against the City and Chief Fontenot is dictated by Louisiana Civil Code Article 3492.

Alternatively, plaintiff argues that if the Court finds that Article 3493.1 is inapplicable, his claims are not prescribed due to the jurisprudential exception to prescription of *contra non valentem non currit praescriptio*. Thus, if plaintiff's claims against defendants are subject to a liberative prescription of one year, the prescriptive period was interrupted by fifty-three (53) days, as Savoy argues that he was prevented from bringing his claim during the time he spent on lock down.[11] Savoy contends that the prescriptive period was suspended until April 11, 2008, the day after he was released from lock down, and because he filed his complaint on February 14, 2008, his claims are timely. Defendants respond that plaintiff's failure to timely file suit is not excused under the doctrine of *contra non valentum*, arguing that if plaintiff was in fact beaten by the officers as alleged, he had sufficient facts upon which to file a suit at that time, and thus cannot prove that prescription was suspended. Furthermore, defendants contend that they did not act to prevent Savoy from pursuing his

---

[11]Savoy states that Chief Fontenot made the decision to put him on lock down beginning on January 17, 2007, and ending on January 19, 2007, when he was transferred to St. Landry Parish Jail. Savoy claims that he was placed in solitary confinement on February 19, 2007, until March 31, 2007, at the St. Landry Parish Jail immediately following an incident where fellow inmates allegedly attacked him. Savoy argues that each time he was put on lock down, prescription was suspended.

claims in a timely manner, and further, there were no legal barriers deterring plaintiff from bringing this action.

Under Louisiana Civil Code article 3492, prescription commences to run from the day injury or damage is sustained. *See* La. C.C. art. 3492. Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action. *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La.1993). However, the doctrine of *contra non valentem* prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff." *Id*. The courts created the doctrine of *contra non valentem* as an exception to the general rules of prescription. *Wimberly v. Gatch*, 635 So.2d 206 (La.1994). The doctrine suspends prescription where the circumstances of the case fall into one of four categories: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. *Causby v. Perque Floor Covering*, 707 So.2d 23, 25, (La.1998). In *Cole,* the Court was careful to explain that while "[p]rescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. . .[o]n the other hand, a

10

plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury." *Cole* at 1156 (quoting *Jordan v. Employee Transfer Corp.*, 509 So.2d 420, 423 (La.1987)). Furthermore, "[w]hen prescription begins to run depends on the reasonableness of a plaintiff's action or inaction." *Id.*

The alleged tortious conduct of the City of Eunice and Chief Fontenot, occurred on January 17, 2009, and was immediately apparent to the plaintiff as evidenced by Savoy's own admission that he contacted several news vendors on that day to publicly denounce the treatment he received and to express his opinion that the actions of the defendants were unlawful [Rec. Doc. 128-3, Ex. "C" Deposition of Mark Savoy, pgs. 28, 29, 40, 46, 174, 175]. Thus, at the latest, the prescriptive period began to run on January 19, 2007, the date that Savoy was transferred to St. Landry Parish Jail. Savoy had one year from that date or until January 21, 2008, to bring an action against defendants. However, no such filing was made until February 15, 2008, almost thirteen months after defendants' alleged conduct. On the face of plaintiff's complaint, his claims against the City and Chief Fontenot are prescribed. Plaintiff has been unable to demonstrate either an interruption or suspension of the limitations period. Savoy's claims against the City of Eunice and Chief James Gary Fontenot, individually and in his official capacity as Chief of Police of the City of Eunice, are prescribed under Louisiana Civil Code Article 3492, and must and will be dismissed.

B. Defendant's Motion for Attorneys Fees

The City and Chief Fontenot seek attorney's fees [Rec. Doc. 128] which Savoy

opposes [Rec. Doc. 131]. The basis of defendants' motion is that plaintiff's suit is "unreasonable, frivolous and without foundation." [Rec. Doc. 128-3, 12]. Defendants argue that because Savoy was aware that alleged unconstitutional conduct, which forms the basis of his action occurred more than one year before he filed his lawsuit, under *Christiansburg Garment Co., v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed. 2d 648 (1978),[12] defendants are entitled to attorney's fees [Rec. Doc. 128-3, 13]. Defendants argue that there is no legitimate reason to excuse plaintiff's untimely filing [Rec. Doc. 128-3, 13]. Plaintiff, in opposing the motion argues that he brought this action in good faith, and should not be held liable for the defendants' attorney's fees and costs.

As set out in *Christiansburg Garmet Co. v. EEOC,* the Court is vested with discretion to award attorney's fees pursuant to §1988 when it finds that a plaintiff's claims are "frivolous, unreasonable, groundless, or that the plaintiff continued to litigate after it clearly became so." 434 U.S. at 422. Under this standard, and the facts particular to this case, the Court finds that defendants are not entitled to an award of attorney's fees even though the ultimate result was not favorable to the plaintiff.

C. Plaintiff's Entitlement to Penalties and Attorney's Fees

Plaintiff has also asserted in his Opposition [Rec. Doc. 131] to defendants' motions, that he is entitled to penalties and attorney's fees for defendants' "bringing an untimely

---

[12] In *Christianburg Garment Co.*, the United States Supreme Court articulated that a district court may award attorney's fees to a prevailing civil rights defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." 434 U.S. at 422.

12

defense in bad faith," and "causing undue burden of plaintiff defending a claim that defendant knew that they were going to file an untimely defense" [Rec. Doc. 131]. Plaintiff's assertion is completely without merit, factually or legally, and his claim will thus be denied.

D. Defendants' Motion to Strike Penalty, Punitive, or Exemplary Damages from Third Amended Supplemental Complaint

Defendants filed a Motion to Strike Penalty, Punitive or Exemplary Damages from plaintiff's Third Amended and Supplemental Complaint [Rec. Doc. 114]. As the Court has found that plaintiff's claims are time-barred, the Court need not consider the Defendants' Motion to Strike and it will therefore be denied as moot.

### III. CONCLUSION

For the reasons stated, the Defendants' Motion for Summary Judgment [Rec. Doc. 128] will be granted as all claims against defendants are prescribed. Defendants' Motion for Attorneys Fees as well as plaintiff's Motion for Penalties and Attorneys Fees will be denied. Defendants' Motion to Strike Penalty, Punitive or Exemplary Damages from plaintiff's Third Amended and Supplemental Complaint will be denied as moot.